### SWIFT & COMPANY v. ROBERT M. MURPHY.

Decided March 13, 1907.

**1.—Personal Injuries—Run-Away Horse—Issue.**

In a suit for personal injuries caused by a runaway horse, evidence reviewed and held sufficient to require the trial court to submit to the jury the question whether or not the horse had been hitched as required by city ordinance.

**2.—Same—Same.**

In a suit for personal injuries caused by a runaway horse, evidence reviewed and held to justify the trial court in submitting to the jury the question whether or not the horse in question was docile or otherwise.

Appeal from the Forty-fifth District Court, Bexar County. Tried below before Hon. J. L. Camp.

*C. C. Clamp* and *Seth S. Searcy,* for appellant.—The mere fact that a horse runs away and an accident occurs will not justify an inference of negligence without some evidence of the circumstances under which it occurred, and it is error for the court to assume negligence in its charge on this phase of the case. Belles v. Kellner, 57 L. R. A., 627; Creamer v. McIlvain, 45 L. R. A., 531, et seq.; Button v. Frink, 51 Conn., 342 (50 Am. Rep., 24); Kinnon v. Gilmer, 131 U. S., 24.

Where it appears that the preponderance of the proof is not in favor of the party having the onus, the verdict should be against him. Byers Brothers v. Wallace, 87 Texas, 509; Clark v. Hills, 67 Texas, 148; Hillard v. Johnson, 32 S. W. Rep., 914; International & G. N. Ry. Co. v. McCarthy, 64 Texas, 636.

*T. H. Ridgeway* and *T. M. West,* for appellees.

JAMES, CHIEF JUSTICE.—Robert M. Murphy sued for himself and as next friend of his minor children, Mary, Joe and Robert, for damages for injuries alleged to have been sustained by them by a horse and wagon belonging to defendants Swift & Company running into a wagon in which plaintiffs were seated. It was alleged that defendants' horse became frightened and not being hitched or sufficiently hitched, ran

away and ran into the wagon occupied by plaintiffs, breaking plaintiffs' wagon and causing plaintiffs to be thrown out with great violence, seriously and permanently injuring them. Besides negligence in the above respect the petition alleged a city ordinance which made it an' offense for a driver to leave a horse hitched to a wagon unattended on the street unless hitched with a strap and iron weight of not less than ten pounds and charged negligence in this respect.

Defendants pleaded a general denial, also said ordinance and alleged compliance therewith; that the horse started by reason of a sprinkling cart throwing water upon him.

The verdict was against all plaintiffs except the infant Robert Murphy, who was awarded $5,000.

· The first assignment of error is as follows: "The court erred in the following paragraph of its charge·to the jury: 'If you find from the evidence that on or about the 23d day of December, 1905, plaintiff Robert M. Murphy and his three minor children, Mary Murphy, Joe Murphy and Robert Murphy, were in a vehicle on Blum Street in the city of San Antonio and that a certain horse belonging to defendants, herein, became frightened and ran against said vehicle and that thereby plaintiffs Mary Murphy, Joe Murphy and Robert Murphy were thrown to the ground or pavement and by reason thereof they or either of them sustained any of the injuries complained of in the plaintiffs' petition, and you further find that the driver in charge of said defendants' horse that ran against the said vehicle, left said horse unattended on said street without being hitched and that in leaving said horse on said street without being hitched, if you find he was so left, defendants' driver in charge of said horse was guilty of negligence and that such negligence, if any, was the direct cause of the injuries, if any, to said plaintiffs or either of them, then you will find for such plaintiffs as you may believe from the evidence have been damaged thereby, if either',·for the following reasons:

"(a)   Because there was no evidence whatever that the horse of the defendants when left on Bonham Street on the occasion in question was left unhitched   On the contrary the undisputed testimony shows that the horse when left on Bonham Street was left hitched by a strong strap fastened to the bridle and the other end of the strap fastened to an eleven pound iron buggy weight.

"(b)   Because said charge assumed a state of facts not proven and submits the issue of negligence per se, when the undisputed testimony shows that said horse was left hitched with a strap and weight as before described, and the only issue before the jury was or could be, was the act of the defendants in leaving the horse at the place and under the circumstances shown, such care as an ordinarily prudent man would exercise under the same or similar circumstances.

"(c)   Because in telling the jury that it was negligence per se to leave the horse unattended and unhitched the court placed prominently before the jury this issue, when in fact the evidence without the slightest contradiction showed that an ordinance of the city of San Antonio made it lawful for a driver to leave his horse unattended if he had a weight of not less than ten pounds attached to a strap and the strap attached to the bridle bit, and further that the horse when he was left on Bonham

Street was left hitched with a weight and strap as required by the city ordinance."

It will be noticed that the charge complained of authorized a verdict for plaintiff in the event the jury found that defendants' driver left the horse unattended in the street without being hitched and that in so doing they found he was guilty of negligence. The sum of appellants' contentions is that this was not an issue because the undisputed testimony showed that the horse when left on Bonham Street was left hitched by a strong strap fastened to the bridle and the other end of the strap was fastened to an eleven pound buggy weight; and that the only issue which was proper to submit, would have been: was the act of the driver in leaving the horse at the place and under the circumstances shown such care as an ordinarily prudent man would exercise under like circumstances. In disposing of this assignment it would only be necessary to show that there was testimony indicating that the horse was not hitched. Was there an issue in the evidence as to the horse being hitched at all is the question?

This was a delivery wagon of appellant and at the time in question it had stopped on Bonham Street at the rear door of the Menger Hotel building to deliver meat. This point was about 25 feet from the corner of Bonham and Crockett Streets, and the wagon in which plaintiffs were was standing on Crockett Street about 100 feet from said corner. The horse, a large, powerful one, ran away with the delivery wagon, around said corner up Crockett Street towards Alamo Plaza and ran into plaintiffs' wagon and threw out its occupants. The substance of Murphy's testimony was that the horse had no strap on him when he ran into his wagon. A witness, Geyer, testified in substance that he was standing right back of the Menger Hotel when the horse came around the corner and he had no weight on him. The witness Stryke, driver of a city sprinkling wagon, testified to passing by the place when the horse was standing and didn't notice the horse hitched. The testimony of this witness on this subject however would indicate that he did not notice whether he was hitched or not, because he was not noticing at all and therefore little or no weight is attached to his statement. But the testimony of the other two witnesses above mentioned went to show that at the time the horse turned the corner there was no strap to him. There was no effort to claim that the strap had broken or broken loose. On the contrary the driver testified that he attached the strap and weight to the horse and that it never did come off. Frank Stanush, the storekeeper of the hotel, testified that he saw the horse turn the corner and the horse was pulling the weight. Another witness, Hutchison, testified that the horse had a weight to him when he ran into plaintiffs' wagon.

We think we need not go further than this in the effort to discover the existence of testimony to support the inference that the horse when he started, was, in reference to being hitched, in the same condition he was when he turned the corner, and when he threw himself upon plaintiffs' wagon. The issue as made by the witnesses did not well admit of any theory that the horse was hitched with strap and weight and that the horse broke loose, or that the strap became detached from the horse after he started. If the horse had no strap on him when he struck the wagon, he had none on him when he started, or *vice versa,* and there was

testimony supporting either view of the issue. We therefore overrule the first assignment.

The second assignment is as follows: "Or if you find that defendants' driver in charge of said horse left said horse with a strap and weight attached to him for the purpose of holding him during his absence and you further find that in so doing, if you find he did, he was guilty of negligence and that such negligence, if any, was the direct cause of plaintiff's injuries, if any, then you will find for plaintiffs or either of them as you may believe from the evidence has been damaged thereby, if either. (a) Because the defendant could not be guilty of negligence nor would it be liable if the driver left the horse hitched as described and the horse was a gentle horse, in the absence of some evidence showing that the horse was wild or unruly or was a runaway or ever tried to run away prior to said date. (b) Because said charge is not the law of this case and placed the issue of the negligence of the defendants too prominently before the jury and enabled them to find a verdict against the defendants upon a wrong theory of the negligence of the defendants."

The assignment must be tested by the propositions advanced in the brief and they are, 1st: "The mere fact that a horse runs away and an accident occurs will not justify an inference of negligence without some evidence of the circumstances under which it occurred, and it was error for the court to assume negligence in its charge on this phase of the case." And 2d. "Negligence will not be inferred against the owner of a team of horses from the mere fact that they cause damage by running away." The point seems from the brief to be, as expressed in appellants' argument, that the testimony shows beyond question that the horse was a gentle, tractable animal, never having run away before or since, though driven through the streets of San Antonio almost two months, stopping daily at a number of places, hitched in the same manner, and that on this occasion a street sprinkler had just passed and that the sides of the horse and the wagon were wet and the ground where the horse had been standing was wet, therefore, the charge was error.

It is difficult to see how it could be asserted that the fact that the horse was docile and had evinced no disposition to scare or run away was shown beyond question, in view of the following evidence: The aforesaid witness, Stanush, stated that this driver was always very particular about the horse, because the horse was always trying to run away from a wagon or something that would scare him. The witness Stryke, who drove the sprinkling wagon testified that he threw no water on the horse, that he cut the water off as he passed and after he passed he turned it on again, that he had seen the horse lots of times, that he generally paid careful attention to this horse, and never put any water on him. "When you see an animal that is kinder skittish you don't want to make any runaways." "As a general rule I see a kinder skittish looking horse I cut the water off." The impression made upon the witness' mind from seeing the animal, as he said often, was that he was skittish. The existence of this evidence seems to us to leave appellants' contentions without the basis they claim for this assignment.

The third assignment complains of the verdict being contrary to a

charge which defendant had asked and which the court inserted in the general charge, as follows: "You are further instructed that if you find from the evidence that the horse driven by the defendants' driver on the 23d day of December, 1905, was a gentle animal, and if you further believe from the evidence that said horse was hitched with a strap and weight at the time he started, and you further believe from the evidence that said hitching strap and weight was such a hitching strap and weight as an ordinarily prudent man under the same or similar circumstances would have used, then you will render a verdict in favor of the defendants herein." This assignment is disposed of by the evidence shown in connection with the preceding assignments.

The fourth assignment is that the verdict is contrary to the evidence, and it is overruled. In regard to the fifth we are unable to declare that the verdict in any manner indicates that it was the result of passion and prejudice, or that it was against the preponderance of the evidence. Judgment affirmed.

*Affirmed.*

Writ of error refused.